433 So.2d 897 (1983)
Harry R. CABRAL, et al.
v.
CIB INVESTMENTS, INC., et al.
No. 83-CA-313.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1983.
A. Russell Roberts, Metairie, for plaintiffs and appellees.
*898 G. Thomas Porteous, Jr., Metairie, for defendants and appellants.
Before BOUTALL, BOWES and DUFRESNE, JJ.
BOWES, Judge.
Defendants Carol Mahl, wife of/and Joseph Toujouse appeal a judgment of the district court against them, in favor of plaintiff-appellee, Harry R. Cabral, Jr., in the sum of Thirty-two thousand four hundred two and 40/100 ($32,402.40) dollars, together with interest at the rate of eighteen per cent (18%) per annum from maturity until paid, and twenty per cent (20%) attorney's fees, for legal interest, and for all costs. We affirm in part, annul in part, and remand to the trial court for further proceedings consistent with this opinion.
Plaintiff, Harry R. Cabral, Jr., acting in his capacity as a Notary Public, executed an authentic Act on August 14, 1979, whereby CIB Investments, Inc. was organized as a corporation under the laws of the State of Louisiana. CIB's charter authorized the corporation to issue one hundred shares of no par value common stock. The stock was issued as follows: fifty shares to Carol Toujouse (sister of Burl H. Mahl, III), who was named as president and secretary, and fifty shares to Joseph Toujouse, who was named vice-president and treasurer. The corporation's registered agent for the purpose of service was given as Carol Toujouse. No where in the corporate records does one find any other person listed, either directly or by inference. At page 44 of the trial transcript, Joseph Toujouse testified that CIB had a third shareholder, Sue Mahl (Susan B. Nichols, wife of Burl H. Mahl, III, who is Carol Toujouse's brother), and, at page 48, Carol Toujouse testified as follows: "As far as I understood, CIB Investments was their [Sue and Burl Mahl's] investment and Burl Mahl could not have anything in his name and I was there to sign some papers to help out." While we are inclined to believe this testimony, we must take note that nowhere in the corporate records is there one shred of evidence to support this testimony, so it remains unproven.
On August 15, 1979, the day after it was formed, CIB Investments, Inc. entered into a credit sale with Marvin Corporation wherein CIB purchased a barn and stable located at 3700 River Road, Jefferson Parish, Louisiana. A portion of that sale reads as follows:
MARVIN CORPORATION, a Louisiana Corporation duly authorized to do and doing business in the Parish of Orleans, State of Louisiana, represented herein by its President, Marvin Jeffer, pursuant to a Resolution of the Board of Directors. Who declared that he does by these presents grant, bargain, sell, convey, transfer, assign, abandon, set over, and deliver with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which he has or may have against all preceding owners and vendors, unto:
C.I.B. INVESTMENT CORPORATION, a Louisiana Corporation, created by act before Harry Cabral, Jr., Notary Public, dated the 14th day of August, 1979, recorded M.O.B. folio, Parish of, Louisiana, represented herein by Carol Toujouse, its President, pursuant to a resolution of the Board of Directors, dated the 14th day of August, 1979, annexed hereto; rec. Secty of State Charter Book 327.
Further appearing herein is CAROL TOUJOUSE and SUSAN B. NICHOLS, who obligate themselves, in solido, with C.I.B. Investment Corporation for all obligations herein assumed.
PURCHASERS' PERMANENT MAILING ADDRESS IS 4808 CARTHAGE STREET, METAIRIE, LOUISIANA 70002.
here present accepting, and purchasing for themselves, their heirs and assigns, and acknowledging due delivery and possession thereof, all and singular the following described property, to-wit: ...
Although the foregoing clearly shows CIB to be represented by Carol Toujouse as President and also shows Carol Toujouse and Susan B. Nichols, (wife of Burl H. *899 Mahl, III) to be obligated in solido with CIB, the document makes no reference to a relationship between CIB and Susan Nichols.
On November 21, 1979, the plaintiff-appellee, Harry R. Cabral, Jr., ostensibly as president of CIB, (although, in fact, he was not) executed a second mortgage in the amount of $30,000.00 against the CIB property located at 3700 River Road. In return for this note, CIB was given the sum of $22,000.00. CIB retained $2,000.00 in its corporate account and, on the same day (November 21, 1979), the remaining $20,000.00 was disbursed to Carol Mahl Toujouse. When questioned at trial as to what disposition was made of this $20,000.00, Mrs. Toujouse testified thusly:
A. Yeah. I can tell you where it went. It went on a loan and the rest of the money went into my daughter's account.
Q. What kind of a loan?
A. A personal loan.
Q. A personal loan. Didn't have anything to do with Burl Mahl?
A. No, it did not.
Q. You're sure of that?
A. I'm positive....
On March 12, 1980, the note in question came due for renewal, and, as interest only had been paid on it at that time, the First Progressive Bank in Jefferson refused to renew the note on a term basis and instead required the note now be renewed on an installment basis and that a guarantor endorse the instrument. At the direction and request of Mrs. Toujouse and Burl Mahl, Cabral endorsed a new note in favor of First Progressive Bank in the sum of $33,519.00. Since that time only two payments were made on this debt by CIB. The failure of CIB to make subsequent payments caused the bank to call upon Mr. Cabral, as personal endorser on the loan, to make the payments on the note. The uncontradicted testimony of Mr. Cabral is that "I have paid the loan ever since approximately the third payment...." Because Mr. Cabral kept the note current, it was not sued upon by the bank.
The evidence unquestionably shows that the plaintiff, Cabral, signed the notes in question on behalf of the corporation at the direction and request of its stockholders. We also find that Mr. and Mrs. Toujouse received, personally, the full benefit of the entire $22,000.00 of the loan, $20,000.00 of which was received by them in the form of the proceeds of the check identified as "Plaintiff 7", and the remaining $2,000.00 which was retained by CIB, the corporation owned and operated by them.
We agree with the conclusions of the learned trial judge in his reasons for judgment where he found that the defendants received a benefit from the plaintiff, that the benefit was understood and appreciated by the appellants and that to have the plaintiff pay a debt for value received by another would be unjust and inequitable.
In Minyard v. Curtis Products Inc., 251 La. 624, 205 So.2d 422 (La.1967), Rehearing Denied, the Louisiana Supreme Court made the following declaration:
In all civil matters, where there is no express law, the judge is bound to decide according to equity. La.Civil Code art. 21 (1870). There is, moreover, in our law the moral maxim "that no one ought to enrich himself at the expense of another." La.Civil Code art. 1965 (1870).
This latter article announces the principle of unjust enrichment.
Basically, unjust enrichment transpires when any economic benefit is added to the estate or patrimony of one party through an economic detriment to the estate or patrimony of another with no analogous conveyance of sufficient compensation.
In order to prevail in a claim based upon unjust enrichment, a plaintiff must prove:
1. An enrichment
2. An impoverishment
3. A connection between the enrichment and the improverishment
4. An absence of justification for the enrichment or impoverishment

*900 5. The absence of any other remedy at law
Johnson v. Hospital Affiliates Intern, Inc., 416 So.2d 207 (La.App. 1st Cir.1982); Marceaux v. Town of Lake Arthur, 415 So.2d 610 (La.App. 3rd Cir.1982); G. Woodward Jackson Co., Inc. v. Crispens, 414 So.2d 855 (La.App. 4th Cir.1982); Minyard v. Curtis Products, Inc., supra.
We find that the appellee has proven the elements of unjust enrichment; however, we find it impossible from the record before us to ascertain with any degree of certainty the extent to which Mr. Cabral has been personally impoverished. The record does not indicate that Mr. Cabral has paid the full value of the note, but only that he was making monthly payments on the note. Further, the evidence shows that not all "payments" made by Mr. Cabral were uniform and not all "payments" were made from the same account. Therefore, we annul the quantum portion of the district court judgment and remand the case for determination by the trial court of the exact extent to which Mr. Cabral has been impoverished and order that legal interest be awarded on that amount from the day that each payment was made until paid.
We further find that since neither of the notes were ever sued upon and because it was the language contained in the notes which obligated any party sued thereon to pay attorney's fees, that the trial judge erred in awarding attorney's fees. Therefore, we annul that portion of the district court judgment.
Accordingly, we affirm the trial judge's finding that the defendants, Carol and Joseph Toujouse, are indebted to the plaintiff, annul the quantum of that award, annul the award of attorney's fees and remand to the trial court for further proceedings in accordance with this opinion. Each party is to pay its own costs of this appeal.
AFFIRMED IN PART, ANNULLED IN PART AND REMANDED.